UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | |
|---|---|
| KEITH EDWARD DAVIS, | : Case No. 3:19-cv-271 |
| Plaintiff, | : |
| vs. | : Magistrate Judge Sharon L. Ovington |
| | : (by full consent of the parties) |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : |
| Defendant. | : |

**DECISION AND ENTRY**

**I.      Introduction**

In December 2014, Plaintiff Keith Edward Davis filed an application for Supplemental Security Income. The claim was denied initially and upon reconsideration. After a hearing at Plaintiff's request, Administrative Law Judge Stuart Adkins concluded Plaintiff was not eligible for benefits because he was not under a "disability" as defined in the Social Security Act. The Appeals Council denied Plaintiff's request for review.

Plaintiff subsequently filed this action seeking a remand for benefits, or in the alternative, for further proceedings. The Commissioner asks the Court to affirm the non-disability decision.

The case is presently before the Court upon Plaintiff's Statement of Errors (Doc. No. 10), the Commissioner's Memorandum in Opposition (Doc. No. 13), and the administrative record (Doc. No. 7).

**II.     Background**

Plaintiff asserts that he has been under a disability since July 27, 2014.  At that time, Plaintiff was forty-nine years old.  Accordingly, he was considered a "younger person" under Social Security Regulations.  *See* 20 C.F.R. § 416.963(c).  Prior to the non-disability decision, Plaintiff's age category changed, making him considered a "person closely approaching advanced age."  20 C.F.R. § 416.963(d).  He has a limited education.

The evidence of the record is sufficiently summarized in the ALJ's decision (Doc. No. 7, Page ID 63-76), Plaintiff's Statement of Errors (Doc. No. 10), and the Commissioner's Memorandum in Opposition (Doc. No. 13).  Rather than repeat these summaries, the Court will focus on the pertinent evidence in the discussion below.

**III.    Standard of Review**

The Social Security Administration provides Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York*, 476 U.S. 467, 470, 106 S. Ct. 2022, 90 L. Ed. 2d 462 (1986); *see* 42 U.S.C. § 1382(a).  The term "disability" – as defined by the Social Security act – has specialized meaning of limited scope.  It encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing a significant paid job – i.e., "substantial gainful activity," in Social Security lexicon.  42 U.S.C. §§ 1382c(a)(3)(A)-(B); *see Bowen*, 476 U.S. at 469-70.

Judicial review of an ALJ's non-disability decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406

2

(6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met – that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakely*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance …" *Rogers*, 486 F.3d at 241 (citations and internal quotation marks omitted); *see Gentry*, 741 F.3d at 722.

The other line of judicial inquiry – reviewing the correctness of the ALJ's legal criteria – may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

**IV.    The ALJ's Decision**

As noted previously, the Administrative Law Judge was tasked with evaluating the evidence related to Plaintiff's application for benefits. In doing so, the Administrative Law

3

Judge considered each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 416.920. He reached the following main conclusions:

> Step 1: Plaintiff did not engage in substantial gainful employment since the application date, December 17, 2014.
>
> Step 2: He has the severe impairments of fractured left tibia, osteoarthritis, obesity, affective disorders, anxiety disorders, and post-traumatic stress disorder.
>
> Step 3: He does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.
>
> Step 4: His residual functional capacity, or the most he could do despite his impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of "light work subject to the following limitations: (1) permitted to alternate between sitting and standing while at the workstation every 20 minutes; (2) never climb ladders, ropes and scaffolds; (3) frequently climb ramps and stairs, kneel, crouch and crawl; (4) can use a single point cane for ambulation in the contralateral hand; (5) avoid all exposure to unprotected heights; (6) can perform simple, routine tasks, with limited written instructions, but not at a production rate pace; (7) occasional contact with the general public; and (8) can tolerate occasional changes in routine work setting defined as 1-2 per week."
>
> Step 4: Plaintiff is unable to perform any past relevant work.
>
> Step 5: Plaintiff could perform a significant number of jobs that exist in the national economy.

(Doc. No. 7, PageID 66-76). Based on these findings, the Administrative Law Judge ultimately concluded that Plaintiff was not under a benefits-qualifying disability. *Id.* at 76.

## V. **Discussion**

Plaintiff's argument rests on the ALJ's duty to fully and fairly develop the record. As alleged, the record was not fully and fairly developed and the ALJ erred by not requesting an updated consultative evaluation. (Doc. No. 10, PageID 557-58).

An ALJ has the duty to fully and fairly develop the record. *See* 20 C.F.R. § 416.912. This duty "is balanced with the fact that '[t]he burden of providing a complete record, defined as evidence complete and detailed enough to enable the Secretary to make a disability determination, rests with the claimant.'" *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986) (citing 20 C.F.R. §§ 416.912, 416.913(d)). There is no bright line test for determining if this duty was fulfilled, so the decision is "made on a case by case basis." *Lashley v. Sec'y of HHS*, 708 F.2d 1048, 1052 (6th Cir. 1983).

Indeed, "under certain circumstances – when a claimant is (1) without counsel, (2) incapable of presenting an effective case, and (3) unfamiliar with hearing procedures – an ALJ has a special, heightened duty to develop the record. *Wilson v. Comm'r of Soc. Sec.*, 280 F. App'x 456, 459 (6th Cir. 2008) (citing *Lashley*, 708 F.2d at 1048). But "absent such special circumstances," the Sixth Circuit "repeatedly affirms that the claimant bears the ultimate burden of proving disability." *Id*; *see also Trandafir v. Comm'r of Soc. Sec.*, 58 F. App'x 113, 115 (6th Cir. 2003).

As a threshold matter, Plaintiff contends the ALJ had a heightened duty in this case because Plaintiff was unable to obtain medical treatment for several years due to lack of insurance. (Doc. No. 10, PageID 558). Yet as even Plaintiff himself acknowledges, he was represented by counsel at the hearing. At most, Plaintiff alleges he was incapable of

5

presenting an effective case due to insufficient medical records. The undersigned is certainly sympathetic to Plaintiff's inability to obtain proper medical care, but those unfortunate circumstances do not meet the requirements for a special, heightened duty.

Irrespective of whether a heightened duty exists, Plaintiff alleges the ALJ erred in not requesting an updated consultative examination due to an inconsistency in the opinion of consultative examiner Dr. Damian Danopulos.[1]  (Doc. No 10, PageID 559).  Plaintiff argues that the opinion, which was afforded "great weight," is inconsistent as to Plaintiff's need for an assistive device such as a crutch, and that Dr. Danopulos erroneously found Plaintiff's use of a crutch was "practically not needed."  (Doc. No. 7, PageID 532, 559). He claims that an assistive device is medically necessary, and as a result, he is incapable of performing light work, undermining the non-disability finding.

As to Dr. Danopulos' findings, he observed Plaintiff walk into the examining room without a crutch and with a normal gait. *Id.*  Yet, on musculoskeletal exam, Dr. Danopulos observed "a limping gait [that was] helped with a crutch" and "toe and heel gait [that] could not be done." *Id.* at 530.  The latter observation does not entirely support his ultimate finding that Plaintiff's use of the crutch "practically [was] not needed." *Id.* at 532. Nevertheless, his opinion as to Plaintiff's use of a crutch does not seem to render the opinion as a whole unreliable because Plaintiff does not allege any other issues or inconsistencies as to Dr. Danopulos' opinion.

---

[1] *See* 20 C.F.R. § 416.919a(b) ("We may purchase a consultative examination to try to resolve an inconsistency in the evidence or when the evidence as a whole is insufficient to support a determination or decision on your claim.")

Moreover, Plaintiff's residual functional capacity demonstrates that a second consultative examination was not needed to resolve this issue because the ALJ was able to compare Dr. Danopulos' opinion with the other evidence in the record and render a fair and accurate assessment. *See* 20 C.F.R. § 416.920b(b)(1) ("If any of the evidence in your case record, including any medical opinion(s) and prior administrative medical findings, is inconsistent, we will consider the relevant evidence and see if we can determine whether you are disabled based on the evidence we have"). Although Dr. Danopulos stated Plaintiff's use of a crutch was practically not needed, the residual functional capacity provides for the use of a cane, which is an assistive device similar to a crutch. The residual functional capacity specifically states that Plaintiff "can use a single point cane for ambulation in the contralateral hand." (Doc. No. 7, PageID 70). Plaintiff fails to resolve, or even address, this significant flaw in his argument. Likewise, he does not contend that the use of a cane would fail to accommodate his need for a crutch.

Equally concerning is the fact that Plaintiff failed to address the vocational expert's related testimony. The vocational expert found that an individual using a cane was capable of light work. He specifically testified that if an individual using a cane could "carry the weight within the exertion level in their contralateral hand," then his testimony as to the light, unskilled jobs would not change. (Doc. No. 7, PageID 119). Plaintiff does not argue that he is incapable of carrying such weight within the exertion level and Dr. Danopulos does not offer any related opinions that would be open to confusion or inconsistency. Therefore, in accordance with the vocational expert's testimony, Plaintiff remains capable of light work even with the use of cane as provided for in the RFC.

A comparison of the recent medical evidence to the evidence from several years prior further undermines Plaintiff's assertions. Such a comparison indicates Plaintiff's situation did not change so substantially as to warrant an updated consultative examination. As Plaintiff himself acknowledges, the post-hearing "examination findings [were] also consistent with Plaintiff's treatment records from 2015." (Doc. No. 10, PageID 561).

In regard to the objective medical evidence, the x-ray in 2015 revealed no fracture or dislocation and no abnormalities suggestive of hardware malfunction. *Id.* at 537. Dr. Danopulos interpreted the MRI in stating that "[t]he left knee x-rays revealed uncomplicated appearance of hardware transfixing a lateral tibia plateau fracture," and "[t]he clinical impression was very mild arthritic changes of the left knee due to this problem including arthralgias of the upper tibia area in the left." *Id.* at 531.

Similarly, treatment notes from Plaintiff's encounter with Dr. Boettler in 2018 indicate limited range of motion in the left knee, a healed surgical scar with slight effusion, no crepitus but some laxity with vulgus stress. (Doc. No. 7, PageID 548). There was no cyanosis or edema in the extremities. *Id.* He assessed that Plaintiff had osteoarthritis of the left knee, prescribed medication, and ordered an x-ray. *Id.* The x-ray showed unilateral primary osteoarthritis, but no soft tissue swelling or joint effusion, and no acute fracture, subluxation or dislocation of the knee. *Id.* at 551. Impressions of the x-ray included (1) mild osteoarthritis involving the left knee joint "similar to the prior study," and (2) postoperative changes related to ORIF of a previous tibial plateau facture, but no evidence of an acute fracture, and no evidence of hardware failure or loosening. *Id.*

These similarities indicate that the status of Plaintiff's impairments remained relatively stable despite his inability to obtain medical treatment for a significant period of time. Thus, it does not appear that an updated consultative evaluation would have further assisted the ALJ in assessing Plaintiff's claim, especially since the ALJ declined to recognize the singular opinion of Dr. Danopulos that is Plaintiff's primary focus. Indeed, "[t]he ALJ has the discretion to determine whether additional evidence is necessary." *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 275 (6th Cir. 2010). And in this case, the ALJ acted within his discretion in determining that an additional consultative examination was not needed. No error occurred. Thus, Plaintiff's contention is without merit.

**IT IS THEREFORE ORDERED THAT**:

1. The ALJ's non-disability decision is affirmed; and
2. The case is terminated on the Court's docket.

March 10, 2021                                     *s/ Sharon L. Ovington*
                                                   Sharon L. Ovington
                                                   United States Magistrate Judge

9